NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DOLORES WRIGHT,<br><br>         Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>         Defendant. | Civil Action No. 16-9520 (SDW)<br><br><br>**OPINION**<br><br><br>January 29, 2019 |

**WIGENTON,** District Judge.

  Before this Court is *pro se* Plaintiff Dolores Wright's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Richard West's ("ALJ West") denial of Plaintiff's claim for a period of disability and disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.[1] This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ West's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] This Court considers any arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

1

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

Plaintiff applied for Disability Insurance Benefits ("DIB") on April 10, 2012[2] and filed an application for Supplemental Security Income ("SSI") on April 28, 2012, alleging disability beginning on September 29, 2001,[3] due to depression, hypertension, chronic obstructive pulmonary disorder ("COPD"), and asthma. (Administrative Record [hereinafter Tr.] 10; 469.) Those applications were denied initially on November 15, 2012, and again upon reconsideration on February 27, 2013. (Tr. 189-94; 200-05.) Plaintiff requested a hearing, which was ultimately held April 8 and August 14, 2015 before ALJ West. (Tr. 26-84.) On August 21, 2015, ALJ West found that Plaintiff was not disabled under the relevant sections of the Act. (Tr. 10-19.) On December 16, 2016, the Social Security Appeals Council denied Plaintiff's request for review. (Tr. 1-3.) This appeal followed. (ECF No. 1).

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was forty years old at the time of her alleged onset disability date, September 29, 2001. (Tr. 18; 439.) She has a Master's in Court Administration and Education from Seton Hall University, and her last significant employment was with McCarter & English, LLP as a paralegal from January 1997 to April 2001. (Tr. 48-53; 440; 445.) Plaintiff's Disability Report ("Report") provides that in this role Plaintiff wrote, typed and handled small and large objects. (Tr. 440-41.) The Report also notes that she handled large objects for approximately two hours, and was able to

---

[2] This Court notes that there is a non-dispositive discrepancy with the filing date cited by the ALJ in his decision and the date indicated in Plaintiff's application for supplemental security income. (Tr. 10.)
[3] The Record also contains references to an onset date of April 1, 2001. (*See* Tr. 369-76; 439.) However, Plaintiff does not challenge ALJ West's use of September 29, 2001 as the appropriate onset date, and because this Court will affirm the Acting Commissioner's decision to deny Plaintiff benefits, the discrepancy is irrelevant for purposes of this Opinion.

sit for six hours daily. (Tr. 441.) Plaintiff also stated that she completed research and computer work related to the firm's cases, as well as client billing. (Tr. 50-52.) In that position, Plaintiff never lifted anything weighing more than ten pounds, but frequently lifted less than ten pounds. (Tr. 441.)

### 2. Medical History

Plaintiff's medical records demonstrate that since 2002, she was treated and examined by numerous physicians for complaints of chest pain, shortness of breath, back and leg pains, COPD, asthma, hypertension and depression.[4] (Tr. 493-502; 506-518; 574-611; 672-713; 727-736; 740-749; 754-791.) She was treated for these symptoms at Newark Beth Israel Medical Center and Rutgers University Behavioral Health Care ("UBHC"). (*Id.*) During this time, she was seen by Dr. Muhammed Ayub, Dr. Pratik Patel, Dr. Doris Koduah, Dr. Rahel Eyassu, ("Dr. Eyassu") Dr. Paul Fulford and Patricia Firrincili, LPC. (*Id.*) Plaintiff also testified about her condition and completed a function report. (Tr. 56-70; 453-460.)

On September 14, 2012, Dr. Eyassu examined Plaintiff, finding that she was not in acute distress, could walk at a reasonable pace, squat halfway, and had "full range of motion in the upper and lower extremity except for pain on flexion and extension of the knee." (Tr. 507.) Dr. Eyassu also reported that Plaintiff was not limited in "sitting, standing, handling, hearing or speaking[,]" but should "[a]void dust, fumes, and other respiratory irritants." (Tr. 508.) Dr. Eyassu noted that Plaintiff "would need to avoid activity with moderate to marked exertion at present until she is ruled out for heart disease." (*Id.*)

In her function report completed in May 2012, Plaintiff stated that she lived in a women's shelter where she engaged in minimal daily activities, such as getting dressed for the day, eating a

---

[4] The bulk of Plaintiff's medical records cover treatment from 2012 – 2014.

3

small breakfast, and going to local pantries for lunch and dinner. (Tr. 453; 455.) Plaintiff also stated that her condition affects her mobility, as she has to move slowly to carry out her personal care functions. (Tr. 454.) She also reported that she has trouble sleeping through the night due to her illnesses. (*Id*.) Plaintiff does not take care of any dependents, but reported that she took care of her two sons while she was employed. (Tr. 456.)

In addition, Plaintiff reported that her ailments affect lifting, walking, climbing stairs, sitting, and bending, as well as other abilities. (Tr. 457-58.) She also noted that she has a short attention span, cannot walk one block without stopping, has difficulty following instructions, and does not handle stress well. (Tr. 458-59.)

### 3. Mental Health History

On November 9, 2012, psychologist Dr. Paul F. Fulford ("Dr. Fulford") examined Plaintiff at the request of a claims adjudicator "due to allegations of depressions, hypertension, [COPD] and asthma." (Tr. 515-517.) Plaintiff's chief complaint was "she 'can't deal with people anymore.'" (Tr. 516.) Plaintiff's hygiene and grooming were good, her attitude was cooperative, and her body alignment was normal. (*Id*.) Dr. Fulford's examination revealed that Plaintiff's "[s]peech was clear and goal directed" with "[n]o looseness of association," her concentration was good, she had "above average" short term memory, fair calculations, good abstract thinking, adequate judgment, and her level of intelligence was "within normal limits[.]" (Tr. 517-17.) Dr. Fulford's diagnostic impression included dysthymic disorder, and he assigned a Global Assessment of Functioning ("GAF") score of 65. (Tr. 517.)

### 4. Hearing Testimony

ALJ West held a hearing on April 8, 2015, during which Plaintiff testified that: she struggles with depression, anxiety, and her ability to concentrate (Tr. 56-58); she has met with

4

both a therapist and psychiatrist for two years regarding her mental health issues (Tr. 58); she was prescribed anxiety medication and antidepressants, including Prozac and Klonopin, which she was directed to take daily (Tr. 59); she has experienced paranoia (Tr. 63-64), blurry vision (Tr. 62), dizziness (Tr. 65., trouble breathing (Tr. 76), leg pains (Tr. 77), and back and hip pain when she sits too long in one position. (Tr. 78.) Plaintiff also testified that she has anger issues, which are triggered when someone says something offensive to her. (Tr. 80.)

At the August 14, 2015 hearing, both the vocational expert, Jackie Wilson ("VE Wilson"), and Plaintiff appeared and testified. (Tr. 26-42.) ALJ West asked Plaintiff about her treatment at UBHC and whether she had noticed a change in her mental health over the past two years. (Tr. 29-32.) Plaintiff replied, "Yes." (Tr. 32.) When ALJ West asked her to explain, she testified that her medications had side effects that made her angry, she could no longer concentrate on tasks, she was unable to deal with stress, and she had a tendency to isolate herself from others when she did not want to be bothered. (Tr. 32-37.)

ALJ West presented VE Wilson with four hypotheticals to gauge Plaintiff's work capabilities. (Tr. 38-42.) He asked if there were any jobs in the national economy for individuals with limitations similar to Plaintiff. (Tr. 40.) VE Wilson responded affirmatively and testified that Plaintiff could perform the following occupations: an inspector and hand packager (approximately 129,000 jobs available), a photocopying machine operator (approximately 27,000 jobs available), or a sealing and canceling machine operator (approximately 70,000 jobs available). (*Id.*) All three occupations fall under the light exertional range. (*Id.*)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence she

accepts and which she rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do her previous work but [unable], considering her age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

### B. The Five-Step Disability Test

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not

disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rules ("SSR") 85-28, 96-3p, 96-4p.[5] An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ

---

[5] On June 14, 2018, the Social Security Administration ("SSA") rescinded SSRs 96-3p and 96-4p because the rulings were considered "unnecessarily duplicative" of SSR 16-3p. Social Security Rulings (SSRs) 96-3p and 96-4p; Rescission of SSRS 96-3p and 96-4p, 83 Fed. Reg. 27816-01 (June 14, 2018). The rescissions do not substantively change the SSA's policies and do not affect this Court's analysis.

proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION[6]

As an initial matter, ALJ West properly applied the five-step disability test before determining that Plaintiff was not disabled since the alleged disability started in September 2001. The ALJ West's findings are supported by substantial credible evidence and there is no basis for remand or reversal because he appropriately considered all of Plaintiff's medically supported complaints. (Tr. 10-19.)

At step one of the five-step test, ALJ West determined that Plaintiff has not engaged in substantial gainful activity since September 29, 2001, the alleged onset date of her disability. (Tr. 12); 20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq*. At step two, ALJ West found that Plaintiff's history of asthma, hypertension and depression are severe impairments because they "significantly limit the claimant's mental and physical abilities to do one or more basic work activities." (Tr. 12-13); 20 C.F.R. §§ 404.1520(c) and 416.920(c). Additionally, ALJ West noted that the record supports a finding that Plaintiff's impairments have remained "at a 'severe' level for a continuous period of more than 12 months." (Tr. 13.)

ALJ West also found that the objective evidence in the record does not support a finding that Plaintiff's complaints of severe pain in her lower back and hip limit her ability to sit, stand or walk, noting that there is "no intensive ongoing treatment for any impairment[,]" any "use of medication[,]" or any "corroboration by a medical source that medication was not effective or that medication caused any side effects." (*Id.*)

---

[6] Prior to addressing the parties' arguments, this Court notes that Plaintiff has not complied with Local Rule 9.1(e). Plaintiff has not submitted a brief that contains a meaningful "statement of the issues presented for review," a statement of facts, or an argument section that is "divided into sections separately treating each issue." L. Civ. R. 9.1(e)(5)(A)-(D). Instead, Plaintiff has submitted a letter to the Court reiterating her argument that ALJ West's decision is not supported by substantial evidence in the record. (ECF No. 1.)

10

At step three, ALJ West found that Plaintiff does not have an impairment that meets the severity of one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"), and supported his conclusions with substantial evidence (Tr. 13-15), including Plaintiff's function report, records from consultative exams, and psychiatric evaluations. (*See e.g.*, Tr. 453-60, 493-518, 754-791); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. Specifically, Plaintiff's impairments were compared with those in Listings §§ 3.03, 4.00(H)(1), and 12.04.[7] (Tr. 13-15.) In considering § 12.04, ALJ West evaluated Plaintiff's mental impairments by assessing the following functional criteria listed in "paragraph B": marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (*Id.*) ALJ West noted mild to moderate difficulties for the above-criteria, but found no evidence of a complete inability for Plaintiff to function outside the home; nor did he find that Plaintiff experienced episodes of decompensation for an extended duration. (Tr. 14.) ALJ West recognized that, while Plaintiff reported in her function report that she performs her daily activities "slowly," the evidence in the record demonstrates that Plaintiff is "able to engage in activities of daily living" as she attends bible study, helps out with her brother's teenage children, and commutes on public transportation. (*Id.*) ALJ West concluded that Plaintiff did not meet the criteria in "paragraph B."

ALJ West went on to consider whether Plaintiff satisfied "paragraph C," and similarly found that Plaintiff did not meet those requirements because her depression and anxiety have not: 1) "resulted in repeated episodes of decompensation[;] or 2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change

---

[7] Section 3.03 addresses asthma, § 4.00(H)(1) addresses hypertension, and § 12.04 addresses depressive, bipolar and related disorders.

11

in the environment would be predicted to cause the individual to decompensate[;]" or 3) impose[d] a limitation on function "outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." (Tr. 15.) Thus, ALJ West properly found that Plaintiff does not have an impairment that meets or medically equals one of the Listings as his findings were supported by the medical records.

At step four, ALJ West followed the proper two-step process to determine Plaintiff's residual functional capacity ("RFC").[8] (Tr. 15-18); 20 C.F.R. §§ 404.1529, 416.929; SSRs 96-4p and 96-7p (explaining the two-step process within step four). At the first step, ALJ West concluded that Plaintiff's "medically determinable impairment could reasonably be expected to" produce her symptoms. (Tr. 16.) However, at the second step, ALJ West found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible[.]" (*Id*.) With respect to Plaintiff's alleged physical impairments, ALJ West noted that objective medical evidence in the record demonstrate Plaintiff's "treating and examining sources[,]" visits to the emergency room, diagnoses of asthma, hypertension and low back pain, and complaints of shortness of breath, chest pain, and back and leg pain. (Tr. 16, 495, 497-502, 702.) However, ALJ West acknowledged that the "findings by the consultative examiner and current progress notes from her primary care physician, at Newark Beth Israel Medical Center" concerning "her ability to perform exertional activities do not indicate any greater restrictions necessary . . . than limiting her to performing light work with additional limitations[.]" (Tr. 16, 506-08, 672-752.) He also noted that treatment notes indicated that Plaintiff's asthma was "well controlled with medications." (*Id.*)

---

[8] First, the ALJ determines "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (Tr. 15.) Second, the ALJ "evaluate[s] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (*Id*.)

12

After carefully considering the entire record, ALJ West found that Plaintiff had the RFC

> to work involving only occasionally climbing, kneeling, crouching and crawling, and performing other postural functions frequently. In addition due to her respiratory condition, she must avoid concentrated exposure to dust, fumes and similar occupational irritants.

(Tr. 16.) ALJ West also assessed Plaintiff's alleged mental distress, finding that despite Plaintiff's monthly visits with a psychiatrist and therapist, "her reported longitudinal problems with depression and anxiety and other symptoms are not necessarily consistent with her allegation of disability." (Tr. 17.) Moreover, ALJ West noted that treatment records show Plaintiff's "cognition remains intact," and that Plaintiff reported an "improvement in her symptoms with treatment." (*Id*.) He further explained that Dr. Fulford's November 9, 2012 examination was normal, and that Plaintiff "was not in mental health treatment and had never been hospitalized for any psychiatric disorder." (*Id*.) Thus, ALJ West properly concluded that Plaintiff's claims of mental distress and functional decline are not supported by the medical evidence, and that the record "shows no significant objective change in her medical condition to warrant such a change in functioning." (*Id*.)

In considering the opinion evidence, ALJ West noted that the record did not "contain any opinions from treating or examining physicians" suggesting that Plaintiff was "totally disabled" or had physical or mental limitations greater than those determined. (*Id*.) In light of these considerations, ALJ West's findings regarding Plaintiff's RFC are supported by substantial credible evidence.

ALJ West determined at step four that Plaintiff's prior work as a paralegal exceeds the RFC assigned, and Plaintiff is unable to perform any past relevant work. (Tr. 18.); 20 C.F.R. §§

404.1565 and 416.965. In reaching his decision, ALJ West acknowledged VE Wilson's testimony that Plaintiff's job was "light and semi-skilled." (Tr. 18, 446.)

At step five, ALJ West again properly considered VE Wilson's testimony in determining that Plaintiff can perform three jobs that exist in significant numbers in the national economy: inspector and hand packager, photocopying machine operator, and sealing and canceling machine operator. (Tr. 18-19, 39-40); 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a). After properly following the five-step disability test, ALJ West determined that Plaintiff is not disabled under the Act.

This Court is required to give deference to the ALJ's findings if it is supported by substantial evidence in the record. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). ALJ West's determination that Plaintiff was not disabled under the Act from September 29, 2001 through August 21, 2015, the date of his decision, is supported by substantial credible evidence in the record.

## IV. CONCLUSION

Because this Court finds that ALJ West's factual findings were supported by substantial credible evidence in the record and his legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk  
cc: Parties